UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYGRANT GLASS COMPANY, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLASS AMERICA LLC, a Delaware limited liability company, GLASS AMERICA ILLINOIS, LLC, an Illinois limited liability company, and THE GERBER GROUP, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 1:24-cv-03093<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff MYGRANT GLASS COMPANY, INC. ("Plaintiff" or "Mygrant") alleges the following against Defendants GLASS AMERICA LLC ("Glass America") and THE GERBER GROUP, INC. ("Gerber Group;" and with Glass America, "Defendants"):

## **INTRODUCTION**

1. Plaintiff brings this action against Defendants for failing to pay for the products Plaintiff duly sold to and were received by Defendants.

2. Pursuant to an agreement entered into by and between the parties, Plaintiff sold, among other items and services, auto glass parts to Defendants so that Defendants are able to maintain and repair the glass of automobiles brought to them by consumers.

3. Plaintiff invoiced Defendants for each transaction Plaintiff entered into with Defendants. However, as of September 2022, Defendants have failed to pay on the invoices, even though they received millions of dollars' worth of auto glass and other products from Plaintiff.

4. In addition, Defendants failed to abide by the provision of the agreement giving Plaintiff "first call" when it came to Defendants' purchases of auto glass and related supply items. Instead, upon information and belief, in violation of the agreement, Defendants purchased auto glass and related supplies from other distributors without first requesting those products from Plaintiff.

5. As described more fully below, Defendants' failure to pay on the invoices and otherwise breaching their agreements with Plaintiff caused Plaintiff damages.

**VENUE AND JURISDICTION**

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and (c), in that Plaintiff is a citizen of a different State from Defendants and that the matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

7. The Court has personal jurisdiction over Defendants because Defendants reside and transact business within the State of Illinois, and otherwise maintain substantial contacts in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (d) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and that Defendants reside and conduct business within this District.

9. Venue is further proper in this Court because the Credit Agreement entered into between Plaintiff and Gerber Group provides that "any action or proceeding for collection shall be with any court of competent jurisdiction setting with the County of Cook, State of Illinois."

**THE PARTIES**

10. Plaintiff MYGRANT GLASS COMPANY, INC. is a California corporation with its principal place of business in Hayward, California.

11. Defendant GLASS AMERICA LLC is a Delaware limited liability company with its principal place of business in Elmhurst, Illinois. Upon information and belief, Glass America is a trade name in the United States for the major retail auto glass operator Boyd Group Services, Inc., which is a Canadian corporation operating through its operating company, The Boyd Group, Inc. and its subsidiaries. Upon information and belief, Boyd Group Services, Inc. purchased Glass America in and around 2013 and operates Glass America as one of its major retail auto glass operators in the United States.

12. Defendant GLASS AMERICA ILLINOIS LLC is an Illinois limited liability company with its principal place of business in Elmhurst, Illinois. Upon information and belief, Glass America is a trade name in the United States for the major retail auto glass operator Boyd Group Services, Inc., which is a Canadian corporation operating through its operating company, The Boyd Group, Inc. and its subsidiaries. Upon information and belief, Boyd Group Services, Inc. purchased Glass America in and around 2013 and operates Glass America as one of its major retail auto glass operators in the United States.

13. Defendant THE GERBER GROUP, INC., also known as, among other names, Gerber Collision & Glass, is a Delaware corporation with its principal place of business in Elmhurst, Illinois. Upon information and belief, Gerber Group is a division of The Boyd Group Services, Inc., which purchased Gerber Group in and around 2004 and uses Gerber Collision & Glass as a trade name for its non-franchised collision repair centers and as another major retail auto glass operator in the United States.

14. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants was the agent and/or employee of each of the other remaining Defendants and, at all times relevant hereto, acted within the course and scope of such agency and/or employment.

**GENERAL ALLEGATIONS**

15. Founded in 1926, Plaintiff is a family-owned auto glass wholesaler and the largest independent distributor of auto replacement glass and supplies in the United States. Plaintiff sells and distributes over 30 different factory brands of auto glass and related supplies in Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Missouri, North Carolina, New Jersey, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin. Plaintiff does not have its own retail shops; instead, Plaintiff only sells and distributes auto glass and related goods to retailers, such as Gerber Group and Glass America.

16. Founded in 1937, Gerber Group provides auto collision and auto glass repair work throughout the United States. Gerber Group has locations in Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, North Carolina, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Washington, Wisconsin, and some Canadian provinces.

17. In or about July 28, 2003, Gerber Group applied for credit and signed a credit application ("Credit Application") with Plaintiff. Plaintiff received Gerber Group's credit application on or about August 5, 2003, and approved the credit application on or about September 9, 2003. Plaintiff extended a credit line to Gerber Group for its purchases from Plaintiff.

18. The Credit Application provides that Gerber Group "agrees to pay finance charges at the rate of 18% per annum or the highest rate permissible by law in the state in which goods

purchased by applicant are delivered, whichever is the lesser, on all amounts not paid within 30 days of due date."

19. The Credit Application further provides that, where the "account is placed in the hands of an attorney for collection or suit instituted to collect same or any portion thereof; [Gerber Group] agrees and promises to pay all reasonable collection expenses, attorneys' fees and costs."

20. Since 2003, Gerber Group has regularly purchased auto glass and other supplies from Plaintiff to service its customers.

21. Glass America is one of the largest automobile glass repair and replacement companies in the United States. Glass America has locations in Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Missouri, Mississippi, North Carolina, New Hampshire, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, West Virginia, and Wyoming.

22. Glass America became a client of Plaintiff on or about July 25, 2003.

23. In their dealings with Plaintiff, Defendants held themselves out to be authorized agents of each other. For instance, agents of the Defendants listed all entity names, Glass America, Gerber Group and Boyd Services, in their email signature lines. Additionally, Defendants' agents discussed, referred to, held themselves out as, and conducted themselves as a single entity for purposes of their dealings with Plaintiff. On or about February 27, 2015, Defendants instructed Plaintiff to consolidate all their accounts under one Gerber account. Accordingly, Plaintiff billed Defendants on the Gerber Group account for all auto glass and supplies Plaintiff sold to either

Gerber Group or Glass America. This arrangement suited all parties throughout the following years.

24. Accordingly, the Credit Application and its terms applies to both Gerber Group and to Glass America.

25. On or about June 1, 2018, Plaintiff and Glass America entered into a Mygrant Glass Supply Agreement ("Supply Agreement") in which Plaintiff agreed to supply to Glass America "auto glass and related supply items."

26. Glass America "agree[d] to provide Mygrant the 'first call' for purchases of auto glass and related supply items each time an auto glass part is needed. If Mygrant does not have the part available to meet [Glass America's] requirements or can not provide the part in a time-frame required by [Glass America], [Glass America] can source the part elsewhere."

27. In turn, Plaintiff agreed to provide Glass America "the best service available in each market that it operates," supplying auto glass and supply coverage to Glass America in Alabama, Arizona, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New York, Tennessee, Texas, Utah, Virginia, and Washington.

28. Pursuant to the Supply Agreement, Plaintiff invoiced Glass America for each transaction Plaintiff entered into with Glass America for auto glass and related supply items. Plaintiff invoiced Glass America on a daily basis, pursuant to Glass America's billing process, and provided semi-monthly invoicing as required.

29. At the end of each month, pursuant to the Supply Agreement, Plaintiff gave Glass America a rebate based on an agreed-upon price per part.

30. The term of the Supply Agreement was for one year, from June 1, 2018 to May 31, 2019. Pursuant to the Supply Agreement, the parties agreed that the term would automatically renew for four additional one-year terms unless either party provided notice of termination within 30 days of the end of each one-year term. If neither party terminated via notice, the Supply Agreement automatically terminated on May 31, 2023.

31. Because Defendants held themselves out to be authorized agents of each other and further instructed Plaintiff to consolidate all their accounts under one Gerber account, Plaintiff granted Gerber Group the same privileges and preferential treatment through the Supply Agreement with Glass America, including the rebates it gave to Glass America.

32. Effective June 1, 2020, an Addendum to the Supply Agreement was entered into by the parties in which the parties amended the amount of rebate Plaintiff offered to Defendants.

33. Between June 2018 and August 2022, Defendants duly paid on Plaintiff's invoices. And where Defendants made inquiries concerning Plaintiff's invoices, Plaintiff worked in good faith with Defendants to satisfactorily resolve any billing irregularities. Defendants then paid the reconciled amounts.

34. Beginning September 2022, Defendants began to fall behind on their payments to Plaintiff. Although Plaintiff invoiced Defendants for the auto glass and supplies Plaintiff sold to Defendants, Defendants paid only on some invoices and left many unpaid.

35. The Supply Agreement terminated as of June 1, 2023. Nonetheless, Plaintiff continued to supply Defendants with auto glass and related supply items. Plaintiff also continued to bill Defendants for each sale of auto glass and/or related items. And, Plaintiff continued to grant rebates to Defendants.

36. Between September 2022 and November 2023, Defendants made only sporadic payments to Plaintiff. The parties also jointly worked together to reconcile outstanding payables. However, a significant number of aging invoices continued to be unpaid by Defendants.

37. Defendants have acknowledged that they are liable for a certain portion of the invoices but have refused to pay on all the outstanding invoices Plaintiff billed to Defendants. Plaintiff provided Defendants with all information requested by Defendants, but Defendants failed to further engage in further reconciliation efforts.

38. Because the parties were unable to resolve the payment issues, in December 2023, Plaintiff brought, in good faith, the situation to the attention of Glass America's Chief Executive Officer in hopes that the parties could achieve resolution.

39. Not only did Defendants fail to appropriately resolve the underlying issue, but Defendants instead cast blame on Mygrant for Defendants' failure to pay on the aged invoices.

40. A number of invoices remain outstanding and unpaid. As of the date of this filing, a balance of at least $500,000 remains unpaid.

41. Defendants also unilaterally asserted $58,871.33 in return credit for glass it had in its warehouses. In addition to demanding that Plaintiff retrieve the glass within 30 days, Defendants deducted credit for glass ineligible for return, and in amounts in excess of Plaintiff's return policy.

42. In addition to demanding payment on the aged invoices, Plaintiff had no choice but to terminate its relationship with Defendants.

43. Upon information and belief, Defendants have long ago used the glass and supplies they obtained from Plaintiff and for which they refuse to pay, to service Defendants' customers, charging and receiving a handsome profit.

44. In addition to charging and receiving a handsome profit from selling Plaintiff's products, Defendants also purchased glass and other products from vendors other than from Plaintiff to service Defendants' customers.

45. Upon information and belief, Defendants did not provide Plaintiff "first call" rights to supply auto glass and supplies, as is required under the Supply Agreement.

46. In or around June 2022, a Glass America employee emailed Plaintiff, seeking "opportunity on these parts," i.e., more competitive pricing concerning various glass and products Plaintiff sold to Glass America.

47. As part of that email, Glass America forwarded information about the pricing it received from Plaintiff's competitors for certain glass and other products. In the data Defendants sent to Plaintiff, Plaintiff found that Defendants purchased only approximately half of their glass and supplies from Plaintiff. The remainder of Defendants' glass and supplies were being purchased from Plaintiff's competitors.

48. Based on a review of Defendants' data, Plaintiff would have been able to meet and provide at least 90% of the glass and other products Glass America required had Defendants given Plaintiff "the 'first call' for purchases of auto glass and related supply items each time an auto glass part is needed."

49. Plaintiff does not know the extent to which Defendants failed to give Plaintiff "first call" for purchases of auto glass and related supply items, but, upon information and belief, Defendants have never given Plaintiff "first call" as required under the Supply Agreement.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
**(By Plaintiff Against All Defendants)**

50. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

51. Pursuant to the Supply Agreement, Plaintiff sold to Glass America auto glass and related supplies, which Glass America accepted.

52. Plaintiff sold to Gerber Group auto glass and related supplies pursuant to the same Supply Agreement, which Gerber Group accepted.

53. Even after the Supply Agreement was no longer effective as of May 31, 2023, Plaintiff continued to sell, and Defendants continued to accept from Plaintiff, auto glass and related supply items.

54. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Supply Agreement.

55. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Credit Application.

56. Defendants have breached the Supply Agreement by refusing to pay for the auto glass and related supply items that they received.

57. Defendants further breached the Credit Agreement by their refusal to pay for the auto glass and related supply items that they received.

58. Defendants agreed to pay finance charges at the rate of 18% per annum or the highest rate permissible by law on all amounts not paid within 30 days of the due date.

59. As a result of the breach, Plaintiff has suffered damages in an amount to be proven at trial.

60. Furthermore, Plaintiff is entitled to interest, expenses, attorneys' fees, and costs pursuant to the Credit Agreement.

WHEREFORE, Plaintiff seeks relief against Defendants as set forth below.

## SECOND CLAIM FOR RELIEF
### Account Stated
**(By Plaintiff Against All Defendants)**

61. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

62. Pursuant to the Supply Agreement, Plaintiff sold to Glass America auto glass and related supplies, which Glass America accepted.

63. Plaintiff sold to Gerber Group auto glass and related supplies pursuant to the same Supply Agreement, which Gerber Group accepted.

64. Plaintiff presented invoices to Defendants pursuant to the Supply Agreement.

65. The account was accepted by Defendants and Defendants promised to pay on the invoices.

66. Defendants failed to pay Plaintiff for the outstanding invoices.

67. As a result of the breach, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff seeks relief against Defendants as set forth below.

## THIRD CLAIM FOR RELIEF
### Breach of Contract
**(By Plaintiff Against All Defendants)**

68. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

69. Plaintiff and Defendants entered into the Supply Agreement whereby Defendants agreed to purchase Plaintiff's products from Plaintiff on the terms stated therein.

70. The Supply Agreement provided that Defendants would give Plaintiff the "first call" for purchases of auto glass and related supply items each time an auto glass part is needed. Only if Plaintiff did not have the part available or could not provide the part in a time-frame required could Defendants source the part elsewhere.

71. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Supply Agreement.

72. Upon information and belief, Defendants breached the Supply Agreement by failing to give Plaintiff the "first call" for purchases of auto glass and related supply items.

73. Instead, upon information and belief, Defendants purchased auto glass and related supplies from other wholesalers without first seeking to purchase such products from Plaintiff.

74. Defendants' failure to give Plaintiff the "first call" for purchases of auto glass and related supply items denied Plaintiff the full benefit of its bargain.

75. As a result of the breach, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff seeks relief against Defendants as set forth below.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (By Plaintiff Against All Defendants)

76. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

77. As a result of the breaches and wrongful acts of Defendants, Defendants have been unjustly enriched at the expense of Plaintiff. Defendants have derived and continue to derive a

benefit from failing to perform their contractual obligations pursuant to the Supply Agreement and Credit Agreement by acting in violation of their contractual obligations to Plaintiff.

78. Defendants are under an obligation to pay Plaintiff all amounts by which they have been unjustly enriched.

WHEREFORE, Plaintiff seeks relief against Defendants as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, in an amount to be proven at trial, as follows:

A. For damages and/or restitution;

B. For pre- and post-judgment interest, along with reasonable attorneys' fees, costs, and expenses; and

C. For such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial as to all issues so triable.

Date: April 17, 2024

**MYGRANT GLASS COMPANY, INC.**

Plaintiff,

By: /s/ Hal J. Wood
One of Its Attorneys

Hal Wood
Nikita Desai
**KILPATRICK TOWNSEND & STOCKTON LLP**
500 West Madison Street Suite 3700
Chicago, Illinois 60661
(312) 606-3219
(312) 267-2197 (fax)
hwood@ktslaw.com
ndesai@ktslaw.com

Andrew S. MacKay (*Pro Hac Vice* to be applied for)
Nathan U. Desai (*Pro Hac Vice* to be applied for)
**DONAHUE FITZGERALD LLP**
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
(510) 451-3300
(510) 451-1527 (fax)
amackay@donahue.com
ndesai@donahue.com